Pasqualino GERMANOTTA, Plaintiff-Respondent,

v.

NATIONAL INDEMNITY COMPANY, Defendant-Appellant,

AMERICAN FAMILY INSURANCE COMPANY,
Jeffrey Lieungh and Arthur Peters, Inc., Defendants.

Court of Appeals

*No. 83–997. Submitted on briefs January 24, 1984.—*
*Decided May 2, 1984.*
(Also reported in 349 N.W.2d 733.)

For the defendant-appellant, the cause was submitted on the briefs of *Arthur P. Simpson* of *deVries, Vlasak & Schallert, S.C.*, of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Duane L. Arena*, of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   National Indemnity Company appeals from a judgment entered against it and in favor of Germanotta.   Specifically, National contends that the trial court erred in denying its motion for summary judgment seeking dismissal of Germanotta's complaint on the ground that its liability policy did not afford coverage.[1] The trial court found that sec. 344.51(1), Stats., mandated that National's insurance policy, issued to defendant Arthur Peters, Inc., an automobile rental agency, and

---

[1] The notice of appeal states that the appeal is from the final judgment. While this appeal was pending, Germanotta brought a "Motion to Dismiss and For Clarification" which questioned the ability of this appeal to address the trial court's summary judgment ruling. Our order of October 4, 1983 denied the motion and further stated:

an appeal must be taken from a final order or judgment, but once taken, all *intermediate orders may be reviewed.* Sec. 808.03 (1) and Rule 809.10(4), Stats. That is precisely what has occurred in this case. [Emphasis added.]

filed by Peters pursuant to that statute, must provide coverage for damages caused by the negligent operation of a leased motor vehicle.[2] Because we conclude the trial court properly decided that sec. 344.51(1) requires that an insurance policy filed under the statute affords coverage for the negligent operation of rental vehicles, we affirm.

Peters is an automobile rental agency from which Jeffrey Lieungh Real Estate leased an automobile. Section 344.51(1), Stats., requires that lessors of automobiles file a bond or insurance policy with the Department of Transportation. Such bond or policy must provide that the issuing company will be liable in certain statutory amounts for damages caused by the negligent use of the lessor's automobiles. The amount of minimal liability coverage required at the time relevant to the instant case was $15,000 for each person, $30,000 for each occurrence, and $10,000 for injury to or destruction of property. Sec. 344.01(2)(d), Stats. (1979). To comply with these statutory requirements, Peters obtained and filed an "errors and omissions" policy from National covering eighty-eight leased vehicles. This policy provided for liability coverage in the amounts of $100,000 for each person and $300,000 for each occurrence. Peters' lease contract with Lieungh required Lieungh to obtain liability insurance in the amount of $300,000 for personal injuries per each occurrence and $300,000 for property damage per each occurrence. Lieungh failed to procure liability insurance in

---

[2] Section 344.51(1), Stats., provides:

No person may for compensation rent any motor vehicle to be operated by or with the consent of the person renting the vehicle unless there is filed with the department a good and sufficient bond or policy of insurance issued by an insurer authorized to do an automobile liability insurance or surety business in this state. The bond, policy or certificate shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in s. 344.01 (2)(d).

these amounts and instead obtained liability coverage from American Family for only the statutory minimums. Subsequently, on July 12, 1980, Lieungh was involved in an automobile accident with Germanotta.

Germanotta filed suit against Lieungh, American Family, Peters and National. National and Peters moved for summary judgment contending that Peters' duty and the statutory purpose of sec. 344.51, Stats., had been fulfilled by Lieungh's American Family policy. The trial court found, as a matter of law, that the policy issued by National covered damages caused by Lieungh's negligent operation of the leased vehicle. The jury awarded Germanotta damages in the amount of $17,762.09. Judgment against American Family was entered in the amount of $15,000—the extent of American Family's coverage. Judgment for the excess in the amount of $2,267.04 was entered against Lieungh and National.

A motion for summary judgment can be used to address issues of insurance policy coverage. *Jones v. Sears Roebuck & Company*, 80 Wis. 2d 321, 325, 259 N.W.2d 70, 71 (1977). A motion for summary judgment is governed by sec. 802.08(2), Stats., which provides that the judgment sought should be rendered by the trial court if the pleadings and affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The record as made on the motion for summary judgment in this case indicates that there is no material issue of fact in dispute. Therefore, the only issue presented to the trial court was a legal question as to whether National's policy, filed pursuant to sec. 344.51, Stats., insured Lieungh's negligent operation of the vehicle and Germanotta's resultant damages.

When called upon to review the denial of a summary judgment motion, we must apply the standards set forth

in sec. 802.08, Stats., in the same manner as the trial court. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). When reviewing a summary judgment determination, we will reverse where the trial court has incorrectly decided a legal issue. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676, 678 (1979).

The precise question presented by the facts of this case has not previously been addressed in Wisconsin. It has been held, however, that the general purpose of sec. 344.-51, Stats., is to provide an answer in damages to a person harmed by the negligence of the lessee. *American Family Mutual Insurance Co. v. Reciprocal Insurance Service Exchange Management Co.,* 111 Wis. 2d 308, 310–11, 330 N.W.2d 223, 224–25 (Ct. App. 1983).[3] We noted in *Reciprocal* that, at common law, the lessor of an automobile was not liable to an innocent third party for the negligent operation of a rented automobile by the lessee. *Id.* at 310, 330 N.W.2d at 224. We further noted that the enactment of the predecessor to sec. 344.51 (sec. 85.215, Stats. (1929)) abrogated this common-law rule. *Id.* at 310–11, 330 N.W.2d at 224. We concluded:

The legislature was making a policy decision that lessors were liable to persons harmed by the negligence of the lessee, *if the lessee was unable to pay the damages.*

. . . .

The court in *Herchelroth* declared that the purpose of the financial responsibility chapter is *"to assure response in damages . . . ."*

. . . .

We interpret *Herchelroth* to mean that the lessor is liable to persons damaged by the negligent operation of the leased automobile by the lessee, *if the lessee or his insurer is unable to pay the damages.* [Emphasis added.]

---

[3] The specific issue in *Reciprocal* was whether the provisions of sec. 344.51(2), Stats., made a lessor liable to a lessee's insurer which had made payments to an injured party. The court of appeals held it did not.

*Reciprocal* at 311–12, 330 N.W.2d at 224–25.

National's argument that Lieungh's American Family policy has met the purpose of the statute and assured Germanotta a response in damages is refuted by the very facts of this case. Germanotta's *full* damages have not been responded to by Lieungh's American Family policy. Therefore, under the very language of *Reciprocal,* the lessee in the instant case is unable to pay Germanotta's damages.

Moreover, sec. 344.51(1), Stats., requires the filed policy to provide that the insurer "will be liable for damages . . . in the amounts set forth in s. 344.01(2)(d)." While the statute does not specifically address the situation in the instant case where the filed policy affords broader coverage than the statutory levels, the statute does not prohibit such a policy from affording greater coverage. Professor Couch in his treatise on insurance observes:

Although an insurer may not by its contract restrict its coverage to less than that required by statute, it may contract for a broader coverage than the statutory liability, as, for instance, with respect to territory, *amount,* circumstances of operation, etc., and in such case recovery is measured solely by the policy. [Emphasis added; footnotes omitted.]

12A *Couch on Insurance 2d* § 45:699 (rev. ed. 1981). *See also Prisuda v. General Casualty Co.,* 272 Wis. 41, 48, 74 N.W.2d 777, 781 (1956). In addition, the purpose of compulsory insurance is to protect members of the public injured on the highways by giving them security for payment of their damages.[4] These considerations lead us to the conclusion that the extent of the coverage, after meeting the statutory minimums, should be governed by the language of the policy filed by the lessor in compliance with the statute.

---

[4] 12A *Couch on Insurance 2d* § 45:682 (rev. ed. 1981).

However, National argues that its policy is an "errors and omissions" policy which only affords coverage if the lessee fails to procure his own liability insurance. The endorsement to the policy provided coverage to Peters only if: (1) Peters contractually required a lessee to obtain liability insurance in the amounts of $100,000 per person and $300,000 per occurrence, and (2) if the lessee, through error or accidental omission, allowed such coverage to lapse, creating exposure to Peters under sec. 344.-51, Stats.

It is undisputed that Peters complied with the first proviso of the endorsement by contractually requiring Lieungh to procure liability insurance in the amounts recited. It is also undisputed that Lieungh failed to obtain liability coverage in the amounts required by his lease with Peters. If it be National's argument that the second proviso has not been complied with by Lieungh, the endorsement provisions apply and coverage is afforded pursuant to the terms of the policy. If it be National's argument that Lieungh has complied with the second proviso, then Peters has filed a policy which affords *no* coverage, and this is contrary to the clear mandate of the statute.[5] Under the facts of this case, the risk insured against is that recited by the statute—the negligent operation of a leased motor vehicle—and not that claimed by National—the failure of Lieungh to procure liability insurance.

As a matter of public policy and by operation of law, insurance contracts may be interpreted in such a fashion as to comply with applicable statutes. Such interpretations may even afford protection "not explicit from or even contrary to its written terms." *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 23, 271 N.W.2d

---

[5] This conclusion would also violate the omnibus coverage statute (sec. 632.32(3), Stats.) and the rule of *Smith v. National Indemnity Co.,* 57 Wis. 2d 706, 205 N.W.2d 365 (1973).

603, 608 (1978) (footnote omitted). Parties are chargeable with knowledge of the statutes and with the fact that policies cannot be issued in conflict with them. *Id.* Thus, we conclude that National's policy, filed pursuant to the statute, affords coverage to an injured party as a result of a lessee's negligence.

National makes a public policy argument that this interpretation will, in turn, occasion higher premiums to lessors which will be passed on to the public in the form of higher leasing charges. In answer, we observe that a result mandated by the public policy occasioning financial responsibility or compulsory insurance laws and a correct interpretation of the law must prevail even where the result is "increased liability not reflected in the original premium . . . ." *Bertler* at 23, 271 N.W.2d at 608. Moreover, Peters could: (1) require proof by its lessees that the contractually required liability insurance has been procured; (2) file its lessees' liability policies, or (3) file its "errors and omissions" policy in the statutory amounts and procure added protection under a separate but unfiled policy.

Upon consideration of the language of sec. 344.51, Stats., and the terms of National's liability policy, we conclude the trial court correctly decided that Lieungh's negligence in the operation of the leased vehicle was covered by National's policy and that summary judgment was appropriately denied. The policy therefore afforded coverage for the excess damages awarded to Germanotta.

*By the Court.*—Judgment affirmed.